**U.S. Department of Justice**



*United States Attorney*
*Eastern District of New York*

---

JPL

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

September 21, 2010

<u>By Hand Delivery and ECF</u>

The Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Richard Lugo, et. al.
>      <u>Criminal Docket No. 08-0739 (SLT)</u>

Dear Judge Townes:

Sentencing for defendants Richard Lugo, Korley Okai, Edward Carter and Maceo Braan is currently scheduled for September 29, 2010.  The government respectfully submits this letter in response to the sentencing submissions filed on behalf of the defendants in this matter.  <u>See</u> Sept. 19, 2010, Letter from Paul McAllister, Esq., (Docket # 138); Sept. 17, 2010, Motion from Marion Seltzer, Esq., (Docket # 137); Sept. 9, 2010, Letter from Richard Rosenberg, Esq., (Docket # 136); Apr. 12, 2010, Letter from Richard Rosenberg, Esq., (Docket # 128); Mar. 26, 2010, Letter from James Neville, Esq., (Docket # 122); and Mar. 24, 2010, Letter from Paul McAllister, Esq., (Docket # 121).

As an initial matter, on Friday, September 17, 2010, counsel for Mr. Braan moved to adjourn the sentencing to a date after November 1, 2010.  <u>See</u> Seltzer Motion (Docket #137).  This motion was joined by counsel for Mr. Lugo.  <u>See</u> McAllister Letter (Docket # 138).  Defense counsel seeks the adjournment in anticipation of amendments to the crack cocaine sentencing guidelines.  <u>See</u> U.S. Sentencing Commission, Proposed Amendment and Issues for Comment: Fair Sentencing Act of 2010, available at http://www.ussc.gov/FEDREG/20100908_Proposed_Amendment_Fair_Sentencing.pdf.  The government takes no position on this motion and defers to the Court on whether sentencing should be adjourned in this matter again to await amendments to the advisory guidelines.

BACKGROUND

In approximately June 2007 the Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD"), began an investigation of a suspected violent drug distribution organization in the Walt Whitman Houses in Fort Greene neighborhood of Brooklyn, New York.  As a result of this investigation, on October 24, 2008, a Grand Jury in the Eastern District of New York returned a seventy-seven count indictment that charged defendants Richard Lugo, also known as "Double R," Korley Okai, also known as "Kool-Aid," and Edward Carter, also known as "Sadat," with conspiring to distribute 50 grams or more of cocaine base in violation of Title 21, United States Code, section 846, and committing multiple substantive narcotics distribution offenses, in violation of Title 21, United States Code, section 841(a)(1).  Shortly thereafter the Grand Jury returned a superseding indictment which charged defendant Maceo Braan, also known as "Teefus" with the conspiracy count and two substantive counts.[1]

The investigation in this case revealed that Richard Lugo was a leader of a street level cocaine base distribution organization based in the Walt Whitman Houses.  During the course of this investigation, multiple NYPD Officers acting in undercover capacities, repeatedly purchased cocaine base from Lugo and members of his crew.

On October 27, 2008, law enforcement agents arrested Maceo Braan in the vicinity of the Ingersoll Houses in Fort Greene Brooklyn.  Shortly after his arrest, Braan waived his Miranda rights and stated that he began selling crack cocaine in 2002 on an off and on basis.[2]  On October 28, 2008, law enforcement agents arrested Lugo, Okai and Carter in Brooklyn. In connection with Lugo's arrest, law enforcement agents executed a search warrant of his apartment and recovered approximately $13,214 in United States currency, a white Winchester box for 9 millimeter ammunition which contained 18 rounds of .45 caliber ammunition, and photographs of Lugo together with Okai, Carter and others.  In these photographs, individuals displayed hand signs associated with the Bloods street gang.  In connection with Okai's arrest, law enforcement agents recovered 24 small bags (or "twists") of cocaine base from Okai's person.

---

[1]  Braan was previously charged by criminal complaint.

[2]  This post-arrest statement was the subject of a hearing before Your Honor on October 26, 2009.

On October 28, 2009, Lugo and Okai pleaded guilty to conspiring to distribute 50 grams or more of cocaine base, in violation of Title 21, United States Code, section 846.  Both Lugo and Okai face ten year mandatory minimum sentences.  As part of his plea, Lugo agreed to forfeit the $13,214 seized from his apartment.  Also on October 28, 2009, Carter pleaded guilty to the lesser included offense of conspiring to distribute 5 grams or more of cocaine base, in violation of Title 21, United States Code, section 846.  As part of his plea, Carter stipulated that the offense involved more than 50 grams of cocaine base, however, because he pleaded to a lesser included offense, he faces a five year mandatory minimum sentence rather than ten years.  On November 12, 2009, Braan pleaded guilty to the lesser included offense of conspiring to distribute 5 grams or more of cocaine base, in violation of Title 21, United States Code, section 846.  Braan also stipulated that the offense involved at least 50 grams of cocaine base, however, because he satisfied the safety valve provision set forth by 18 U.S.C. §3553(f), Braan does not face a mandatory minimum sentence.

After the defendants pleaded guilty, Congress passed, and the President signed into law, the Fair Sentencing Act of 2010, Pub. L. No. 111-220 (July 28, 2010), which took effect August 3, 2010.  Prior to August 3, 2010, defendants convicted of distributing over five grams of crack cocaine were subject to a five-year mandatory minimum term of imprisonment and those convicted of distributing over fifty grams were subject to ten-year mandatory minimum terms of imprisonment.  However, effective August 3, 2010, a defendant is subject to a five-year mandatory minimum term of imprisonment for distributing at least 28 grams of crack cocaine and a ten-year mandatory minimum term of imprisonment for distributing at least 280 grams of crack cocaine.  The minimum sentences associated with the distribution of at least five and 50 grams of crack cocaine no longer exist. See Fair Sentencing Act of 2010, Pub. L. No. 111-220 (July 28, 2010).

The defense for Okai, joined by the defense for Lugo, argues that the new statutory sentencing scheme applies to their clients. See McAllister Letter (Docket # 138), Rosenberg Letter (Docket # 136).  For the reasons set forth below, the government respectfully disagrees.  In addition, the defense for Okai complains that Okai should not be held responsible for the entire drug weight attributable to the conspiracy. See Rosenberg Letter (Docket # 128).  Again, for the reasons discussed below, the government respectfully disagrees.  Finally, the government respectfully submits that the section 3553(a) factors weigh in

favor of a substantial sentence for each of the defendants, in line with the government's sentencing estimates provided in the plea agreements.

DISCUSSION

A.   The Defendants' Statutory Minimum Sentences Are Unchanged By The Passage Of The Fair Sentencing Act of 2010

        At issue is whether defendants whose conduct occurred prior to August 3, 2010 are subject to the pre-August 3, 2010 statutory mandatory minimums.  In other words, do Okai and Lugo still face ten year mandatory minimum sentences and does Carter still face a five year mandatory minimum sentence?  Pursuant to the general "saving statute" set forth in 1 U.S.C. § 109 and the relevant case law, the answer is yes.  The saving statute states in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

1 U.S.C. § 109.  See Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 660 (1974)(holding that persons convicted under a narcotics statute expressly prohibiting their consideration for parole could not subsequently be considered for parole, even though the no-parole provision had been repealed following their convictions).

        In United States v. Klump, 536 F.3d 113 (2d Cir. 2008), the Second Circuit considered a similar issue in the context of a firearms statute.  In that case, the defendant challenged the district court's imposition of a ten-year mandatory minimum sentence on a gun possession count under 18 U.S.C. § 924(c)(1)(B)(i), because that statute had expired before he was sentenced.  The defendant maintained that the district court should have imposed the five-year mandatory minimum sentence mandated by the version of § 924(c) in effect at the time he was sentenced.  See id. at 120-21.  The Second Circuit disagreed and stated:

> The older version of § 924(c)(1)(B)(i)
> applies to Klump even though it had expired
> before he was sentenced.  Pursuant to 1
> U.S.C. § 109, "[t]he expiration of a ...
> statute shall not have the effect to release
> or extinguish any penalty ... incurred under
> such statute, unless the ... statute shall so
> expressly provide."  Section 924(c)(1)(B)(i)
> contains no provision expressly prohibiting
> its application to defendants, like Klump,
> who were convicted of possessing a
> semiautomatic assault weapon before the
> statute expired.  Thus, the district court
> properly sentenced him to the ten-year
> mandatory minimum sentence called for by the
> statute.

Id. at 120-21.


        Similarly, in United States v. Bradley, 410 U.S. 605
(1973), the Supreme Court held that defendants who committed
narcotic offenses prior to the effective date of the
Comprehensive Drug Abuse Prevention and Control Act of 1970 were
to be punished according to the law in force at time of the
offense, notwithstanding that sentencing occurred after the
effective date of the Act.  See id. at 607-11 (relying on savings
clause in Act).  In a concurring opinion, Justices Brennan and
White noted that even if there was a question whether the Act's
specific savings clause applied, 1 U.S.C. § 109 "clearly
madat[ed]" that such defendants be punished by the law in force
at the time of the offense.  Id. at 612.


        As Klump and Bradley demonstrate, "penalties accruing
while a statute was in force may be prosecuted after its repeal,
unless there is an express provision to the contrary in the
repealing statute."  United States v. Jackson, 468 F.2d 1388,
1390 (8th Cir. 1972) (citations omitted).  There is no such
express provision in the Fair Sentencing Act of 2010, which
repealed the mandatory minimum sentences for distributing five
and 50 grams of cocaine base.  See Pub. L. No. 111-220 (July 28,
2010).  Therefore, a plain reading of the savings clause requires
the Court to sentence the defendants pursuant to the law that was
in effect at the time the defendants committed their crimes.  As

a result Lugo and Okai face ten year mandatory minimum sentences and Carter faces a five year mandatory minimum sentence.[3]

The defense for Okai argues that the Fair Sentencing Act of 2010 "did not repeal any penalty contained in the statute."  Rosenberg Letter (Docket # 136) at 2.  The defense asserts that the new law amounts to a procedural change rather than a change in the sentencing statute itself.  See id.  This is obviously incorrect.  "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes."  Schriro v. Summerlin, 542 U.S. 348, 353 (2004).[4]  The Fair Sentencing Act altered the range of conduct the law punishes.  Prior to the effective date of the statute, a conviction for distributing 50 grams of cocaine base carried a ten year mandatory minimum penalty; after the effective date of the statute it did not.  This was not a change in procedure, but a change in the penalties available in crack cocaine cases.

The defense fails to cite to any case where a similar change in the penalty provision of a statute was held to amount to a procedural change.  Rather, the defense cites to Booker and its progeny.  See Rosenberg Letter (Docket # 136) at 2.  Booker expressly addressed the procedure of sentencing.  Specifically, the case addressed when sentencing factors need to be found by a jury rather than a judge to avoid running afoul of the Sixth Amendment.  See United States v. Booker, 543 U.S. 220 (2005). The remedial aspects of Booker and its progeny addressed the procedure for sentencing criminal defendants with advisory rather than mandatory sentencing guidelines.  See id.  Counsel for Okai notes that the "Fair Sentencing Act makes even more modest changes in the law than Booker."  Rosenberg Letter (Docket # 136) at 2).  However, the modesty of the change in law is not as issue, rather what is at issue is the nature of the change.  The nature of the change set forth in the Fair Sentencing Act concerns a change in the penalties for crack cocaine offenses, which is a substantive rather than procedural change.  The defenses argument is, therefore, without merit.

---

[3]  Carter has not yet satisfied the criteria for a safety valve reduction of his sentence pursuant to 18 U.S.C. § 3553(f).

[4]  Schriro addressed whether the a jury, rather than a judge sitting alone, should make findings in a death penalty case concerning aggravating factors.  This is clearly procedural in nature.  The present case is more akin to Klump and Bradley as described above.

Okai's remaining arguments are similarly without merit. The defense argues that the Court should look to Congressional intent.  See Rosenberg Letter (Docket # 136) at 2.  The government agrees.  By remaining silent with respect to the retroactive application of the Act, Congress's intent is set forth by the saving statute.  See 1 U.S.C. § 109.  This makes sense, given the fact that the government conducted investigations, gathered evidence, and made prosecutorial decisions, based on the penalty provisions in force at the time the defendants were committing their crimes.

Finally, contrary to counsel's assertion, the construction of the saving statute does not implicate the Fifth or Eighth Amendments in any way.  To the extent counsel believes that the old crack sentencing laws raise such issues, the defense fails to articulate the grounds for such constitutional questions.  In any event, the Court is not being asked to construe the old crack sentencing laws, their meaning is unambiguous.  The defense reliance on the rule of statutory construction which seeks to avoid unconstitutional interpretations of statutes, if they can be avoided, is simply misplaced.

For the reasons set forth above, Lugo and Okai face ten year mandatory minimum sentences and Carter faces a five year mandatory minimum sentence.

B.    The PSR Properly Accounts for the Drug Weight Attributable
      To The Defendants

Okai complains that he should not be held accountable for the full 109 grams attributed to the conspiracy by the Probation Department.  See Rosenberg Letters (Docket # 128, 119). The defense concedes, however, that Okai should be held responsible for at least 50 grams of cocaine base.  Id.  The government agrees with the conclusion reached by the Probation Department.

In determining the quantity of drugs attributable to a defendant for sentencing purposes, the sentencing court must "approximate the relevant drug quantity" if "the quantity seized does not reflect the true scale of the offense."  United States v. Jones, 531 F.3d 163, 175 (2d Cir. 2008) (internal quotation marks omitted) (citing U.S.S.G. § 2D1.1, app. note 12).  "[A] sentencing court may rely on any information it knows about, including evidence that would not be admissible at trial, as long as it is relying on specific evidence -- e.g., drug records,

admissions or live testimony." United States v. McLean, 287 F.3d 127, 133 (2d Cir. 2002) (internal citations and quotation marks omitted). "[T]he district court's estimation need be established only by a preponderance of the evidence." Prince, 110 F.3d at 925 (finding district court did not err in attributing to defendant the estimated weight of marijuana in boxes that were not seized). In making a determination as to drug quantity, the district court must "state in open court" its findings. United States v. Carter, 489 F.3d 528, 537 (2d Cir. 2007).

In addition, "the quantity of drugs attributed to a defendant need not be foreseeable to him when he personally participates, in a direct way, in a jointly undertaken drug transaction." United States v. Chalarca, 95 F.3d 239, 243 (2d Cir. 1996) (finding that defendant should be responsible for entire drug quantity when she participated directly in drug conspiracy); see United States v. Diaz, 176 F.3d 52, 119-20 (2d Cir. 1999) (holding defendant responsible for drug quantity due to direct participation in running drug block even after he was incarcerated).

Even in the absence of evidence demonstrating that a defendant directly participates in jointly undertaken illegal conduct, "[i]t is well established that a district court may consider the relevant conduct of co-conspirators when sentencing a defendant." United States v. Johnson, 378 F.3d. 230, 238 (2d Cir. 2004). "A defendant convicted for a 'jointly undertaken criminal activity' such as... [a] drug trafficking conspiracy, may be held responsible for 'all reasonably foreseeable acts' of others in furtherance of the conspiracy," United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quoting U.S.S.G. § 1B1.3(a)(1)(B)), provided that the court makes particularized findings that the acts committed are within the scope of the defendant's agreement with his coconspirators and that the acts of the co-conspirators are reasonably foreseeable to the defendant, United States v. Studley, 47 F.3d 569, 574 (2d Cir. 1995); see also Snow, 462 F.3d at 72 ("The defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved."). The ultimate question is "whether the conspiracy-wide quantity was within the scope of the criminal activity" to which the defendant agreed. Id.

In this case, the Probation Department only attributed 109.331 grams of cocaine base to the members of the conspiracy. This amount reflects the actual net weight of the narcotics sold to undercover NYPD officers by members of the conspiracy. This

assumes that the defendants did not sell crack cocaine to anyone else during the period of the charged conspiracy.  However, in his post-arrest statement, Braan described how in approximately 2007-2008 he started selling crack cocaine on a more regular basis because his unemployment benefits ceased.  Braan stated that he sold approximately twelve grams of crack cocaine a week until the time of his arrest.  Brann did not link these sales to any of his co-defendants, however, the government submits that the frequency and weight of his sales can be considered as evidence of the conspiracy's activities.  The government submits that holding the conspirators responsible for the drugs actually sold to the NYPD undercover officers is a conservative estimate for Guidelines purposes.

C.    The Section 3553(a) Factors Weigh in Favor of Substantial
      Sentences for the Defendants

        The defendants move for non-guidelines sentences pursuant to 18 U.S.C. § 3553(a).  The government opposes these motions and believes that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of substantial sentences.  Interpreting the Supreme Court's decision in United States v. Booker, the Second Circuit has held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).  "While district courts enjoy discretion following Booker, that discretion must be informed by the § 3553(a) factors; a district court cannot import its own philosophy of sentencing if it is inconsistent with the § 3553(a) factors." Id. at 132 (internal quotation marks omitted).  In this case, the factors set forth by 18 U.S.C. § 3553(a) weigh in favor of substantial sentences.

        1.    The Nature and Circumstances of the Offense Weigh in
              Favor of a Sentence within the Guidelines Range

        The defendants participated in a long running crack cocaine conspiracy that operated out of a public housing development in Fort Greene, Brooklyn.  Video recordings show the defendants using the buildings' lobbies and hallways as their preferred places to exchange the drugs for cash.  By using the buildings' public spaces, the defendants exposed the men, women and children who live in those buildings to their dangerous and illegal trade on a daily basis.  The government respectfully submits that this is serious criminal conduct that weighs in favor of a substantial sentence.  In the plea agreements, the government accounted for the defendants' varying roles in the conspiracy using the sentencing guidelines.  The government assessed a three-point minor role adjustment for Braan, a two-

point minor role adjustment for Carter, and a two-point leadership adjustment for Lugo.

> 2.    The History and Characteristics of the Defendant Weigh in Favor of a Guidelines Sentence

On balance, the history and characteristics of Lugo, Okai and Carter weigh in favor of a substantial sentence.

With respect to Okai, he is a repeat offender.  In 2004, Okai pleaded guilty to a Class B narcotics felony in state court and was sentenced to two years incarceration.  (PSR ¶¶ 24-6).  As noted by the Probation Department, Okai committed the instant offense less than two years after he was released from incarceration on that sentence.  (PSR ¶ 28).

With respect to Carter, he is also a recidivist.  In 1995 he was adjudicated a youthful offender for selling drugs to an undercover police officer.  (PSR ¶¶ 24-5).  Originally, Carter was charged with a Class B narcotics felony.  Furthermore, Carter is a trained welder.  (PSR ¶¶ 50-1).  He had viable options to look for work in the community instead of breaking the law to sell drugs.  In addition, based on Carter's financial profile and the explanation of that profile by the defense, it appears that Carter has committed mortgage fraud by acting as a straw purchaser, or "nominee" purchaser for a property.  See Neville Letter, PSR ¶ 62.

With respect to Lugo, he is also a recidivist.  In 1997 Lugo was sentenced as a juvenile to a conditional discharge for selling crack cocaine.  At the time of his arrest, Lugo was found in possession of 20 bags of crack cocaine and offered the NYPD officers a $3,000 bribe to let him go free.  (PSR ¶¶ 23-4).  In 2007, Lugo was arrested for selling marijuana.  (PSR ¶ 25).  As described above, Lugo was the leader of the conspiracy.  He possessed more than $13,000 in a safe in his bedroom at the time of his arrest and yet he has been unemployed since at least 2006.  (PSR ¶ 54).  In addition, 18 rounds of .45 caliber ammunition were found in the defendant's apartment.

With respect to Braan, he seems to have significant mental health issues which the Court may take into account when sentencing him.  As established by the government at the suppression hearing in this case, Braan sought to exaggerate and capitalize on his mental health problems in an attempt to avoid responsibility in this case.  However, Braan eventually accepted responsibility for his crimes, pleaded guilty and satisfied the safety valve provisions.  Braan did commit serious crimes over a

11

long period of time.  However, there is little doubt that Braan suffers from some degree of mental illness which the Court may account for at sentencing.

      3.    The Deterrence Factor Weighs in Favor of a Guidelines <u>Sentence</u>

      The government respectfully submits that a guidelines sentence is necessary for purposes of general and specific deterrence.

      4.    <u>Protecting the Public Requires a Substantial Sentence</u>

      The government respectfully submits that a substantial sentence is required to protect the public from future crimes of the defendants, particularly Lugo, Okai and Carter who have already demonstrated recidivist tendencies.

      5.    Providing the Defendant with Programs Is an <u>Inconsequential Factor in the Instant Case</u>

      The government respectfully suggests that any determination regarding whether to provide the defendant with educational or vocational programs should be left to the discretion of the Bureau of Prisons.

      6.    <u>Other Factors</u>

      None of the other factors identified in § 3553(a) are applicable to the case at hand.  See 18 U.S.C. § 3553(a)(3) ("the kinds of sentences available"); § 3553(a)(5) ("any pertinent policy statement"); § 3553(a)(6) ("need to avoid unwarranted sentence disparities"); § 3553(a)(7) ("need to provide restitution").

12

## CONCLUSION

For the reasons set forth above, the Court should sentence the defendants to substantial sentences of incarceration of at least ten years for Lugo and Okai, and five years for Carter.[5]

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: _____/s/_____
James P. Loonam
Assistant United States Attorney
(718) 254-7520

cc:   Defense counsel (by ECF)

---

[5]   This assumes Carter does not meet the requirements of the safety valve provision.