UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

RICHARD LUGO, also known as "Double R,"

Defendant.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**

08-CR-739 (SLT)

**TOWNES, United States District Judge:**

In October 2008, defendant Richard Lugo and two co-defendants were indicted on a single count of conspiracy to distribute cocaine base and multiple counts of distribution of cocaine base. About one month later, that indictment was superceded to add a third co-defendant. Neither the indictment nor the superceding indictment included any forfeiture allegations.

On January 2, 2009, Uzmah Saghir, Esq., filed a motion pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, seeking the return of approximately $15,000 seized on October 28, 2008, by the agents who arrested Mr. Lugo at an apartment at 32 Auburn Place, Brooklyn. Although Ms. Saghir was Mr. Lugo's attorney at the time she filed the motion, the motion was not filed on behalf of Mr. Lugo, but on behalf of Mr. Lugo's mother, Tyrana Carter.[1] In an affirmation submitted in support of the motion, Ms. Carter claimed that most of the money was recovered from a safe located in a bedroom which she allegedly occupied and belonged to her, not Mr. Lugo. The government did not respond to the motion, and this Court did not rule on it.

---

[1] Although the notice of motion and the first page of the affirmation in support of the Rule 41(g) motion refer to the movant as "Tyrana Carter-Jones," the affirmation is signed, "Tyrana Carter." Accordingly, this Court will refer to the movant as Ms. Carter.

In October 2009, the government filed a superceding information which included criminal forfeiture allegations relating to $13,213 in cash recovered from the Auburn Place apartment. Mr. Lugo then pled guilty to a single count of conspiracy to distribute cocaine base and agreed to forfeiture of the $13,213 (hereafter, the "Seized Currency"). On January 13, 2011, this Court issued a Preliminary Order of Forfeiture with respect to the Seized Currency (the "Preliminary Order"). That order required, among other things, that the government publish notice of the Preliminary Order and, "to the extent practicable, provide direct written notice to any person known to have alleged an interest in the Seized Currency" (Preliminary Order at 2). The order also stated that third parties asserting a legal interest in the Seized Currency could petition the Court for a hearing to adjudicate the validity of that person's interest in the property pursuant to 21 U.S.C. § 853(n)(6) (*id.* at 3).

Although the Preliminary Order expressly required that any third-party petitions be filed within thirty days of "the final publication of notice or receipt of notice" (*id.*), this Court never received any third-party petitions. Accordingly, at Mr. Lugo's sentencing on May 11, 2011, this Court issued a Final Order of Forfeiture with respect to the Seized Currency (the "Final Order"). About one week later, however, Ms. Carter, proceeding *pro se*, moved to vacate the Final Order. Ms. Carter principally argued that the government failed to provide her with direct written notice of the forfeiture proceedings, despite having been served with the Rule 41(g) motion in January 2009. In addition, Ms. Carter argued that because the government never opposed her Rule 41(g) motion, that motion should have been granted.

In a letter dated May 20, 2011, the government responded to Ms. Carter's motion to vacate by conceding that it had not personally served Ms. Carter with a copy of the Preliminary

Order and consenting to vacatur of the Final Order. In addition, the government argued that because the superceding information contained forfeiture allegations, 21 U.S.C. § 853(k) barred Ms. Carter "from intervening in the criminal case or commencing a Rule 41(g) action" (Letter to Hon. Sandra L. Townes from AUSA Kathleen Nandan, dated May 20, 2011, at 3). The government maintained that "the exclusive avenue" through which Ms. Carter could challenge the forfeiture of the Seized Currency was "an ancillary proceeding pursuant to 21 U.S.C. § 853(n)" (*id.*). The government summarized the provisions of § 853(n), represented that it had served a copy of the Preliminary Order on Ms. Carter on May 19, 2011, and advised Ms. Carter that she had to file a claim within thirty days of her receipt of the Preliminary Order.

In a reply dated June 1, 2011, Ms. Carter argued that this Court has jurisdiction to entertain her Rule 41(g) motion because criminal forfeiture allegations were not included in any of the charging instruments filed prior to the Rule 41(g) motion. Noting that the government never responded to her Rule 41(g) motion, and that said motion had been pending for over two years, Ms. Carter urged the Court to grant her Rule 41(g) motion in the interests of justice. Ms. Carter did not file a claim pursuant to 21 U.S.C. § 853(n).

## *DISCUSSION*

In order to resolve the dispute regarding whether 21 U.S.C. § 853(n) provides "the exclusive avenue" through which Ms. Carter's can challenge the forfeiture of the Seized Currency, this Court must first examine the language of 21 U.S.C. § 853(k) – the subsection which, the government contends, bars Ms. Carter's Rule 41(g) motion. This subsection provides:

> Except as provided in subsection (n) of this section, no party
> claiming an interest in property subject to forfeiture under this
> section may--

3

> (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
>
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

Subsection (n) contains a procedure by which a third party can challenge an order of forfeiture.

In arguing that she was entitled to move for return of the Seized Currency pursuant to Rule 41(g), Ms. Carter focuses exclusively on subsection (k)(2). Ms. Carter correctly notes that forfeiture allegations were not included in either the indictment or the superceding indictment, which predated the filing of the Rule 41(g) motion. Rather, the forfeiture allegations were first included in the superceding information filed in October 2009, more than nine months *after* the Rule 41(g) motion was filed. Accordingly, subsection (k)(2) would not have barred Ms. Carter from bringing "an action at law or equity against the United States concerning the validity of [her] alleged interest in the [Seized Currency]" at the time she filed her Rule 41(g) motion. *See DeAlmeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006).

Ms. Carter did not, however, file "an action at law or equity against the United States." Instead, Ms. Saghir elected to file a Rule 41(g) motion on Ms. Carter's behalf in the criminal case involving her son, Mr. Lugo. Since Ms. Carter herself was not a party to the criminal case, subsection (k)(1) barred Ms. Carter from filing a Rule 41(g) motion on her own behalf in that case.[2]

---

[2] If Ms. Carter had been proceeding *pro se* at the time she filed the Rule 41(g) motion, this Court might have directed, *sua sponte*, that her Rule 41(g) motion be opened as a separate action. However, Ms. Carter was represented by counsel at the time she filed the Rule 41(g) motion.

4

Even had Ms. Carter filed a separate "action at law or equity against the United States," this Court would decline to exercise jurisdiction over that action at this juncture. "A Rule 41(g) motion is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *DeAlmeida*, 459 F.3d at 382. Moreover, "[j]urisdiction under Rule 41 is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials." *Id.* (internal quotations and citations omitted). Accordingly, where a "claimant is afforded the opportunity to test the legality of the seizure in [a] forfeiture proceeding" pursuant to 21 U.S.C. § 853(n), a district court may elect to dismiss the 41(g) motion and relegate the claimant to his or her remedies under § 853(n). *See id.* (quoting *U.S. (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Automobile*, 972 F.2d 472, 479 (2d Cir. 1992)). Indeed, the Second Circuit has implied that this course of action may be a sound practice, since "relegating the claimant to that proceeding would avoid problems inherent in parallel proceedings." *Id.*

The government argues that Ms. Carter will have the opportunity to seek the return of the Seized Currency in a proceeding pursuant to § 853(n). However, in order to afford Ms. Carter a full opportunity, the government must re-serve the written notice required by § 853(n)(1) after entry of this Memorandum and Order. The procedure set forth in § 853(n) requires "a person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section" to "petition the court for a hearing to adjudicate the validity of his alleged interest in the property" "within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier." 21 U.S.C. § 853(n)(2). If no such petitions are filed during this thirty-day period, "the United States shall have clear title

5

to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." 21 U.S.C. § 853(n)(7).

In this case, the government represents that it served the Preliminary Order on Ms. Carter on May 19, 2011 – the day before it responded to Ms. Carter's motion to vacate the Final Order. If the government's action satisfied the requirements of § 853(n)(1) and marked the beginning of the thirty-day period discussed in § 853(n)(2), Ms. Carter would have had to petition the Court for a hearing to adjudicate the validity of her alleged interest in the Seized Currency by June 20, 2011. However, because the Final Order divested Ms. Carter of any rights in the Seized Currency, it is unclear whether Ms. Carter would have been able to assert a legal interest in the property before the issuance of this Memorandum and Order vacating the Final Order. Moreover, even assuming that Ms. Carter had standing to petition the Court, Ms. Carter's decision to seek relief under § 853(n) would have undercut her arguments relating to the 41(g) motion. While this Court shares the government's eagerness to dispose of this matter, the Court cannot allow that eagerness to prejudice Ms. Carter's rights.

## *CONCLUSION*

Tyrana Carter's motion to vacate the Final Order of Forfeiture, dated May 18, 2011, is granted on consent. The Rule 41(g) motion, filed on Ms. Carter's behalf by defendant Richard Lugo's attorney, is barred by 21 U.S.C. § 853(k)(1). Even if the Rule 41(g) motion were not barred, this Court would decline to exercise jurisdiction over it because Ms. Carter can seek the return of the Seized Currency in a proceeding pursuant to 21 U.S.C. § 853(n). However, in order to afford Ms. Carter a full opportunity to pursue her remedies under § 853(n), the government

shall re-serve Ms. Carter with the written notice required under § 853(n)(1) within five days of its receipt of this Memorandum and Order.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: January 3, 2012
Brooklyn, New York